UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>    Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>    Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>    Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>    Plaintiff,<br><br>v.<br><br>Jacob M. Dick Rev Living Trust DTD 4/6/01;<br><br>Estate of Jacob M. Dick, as grantor of the Jacob M. Dick Rev Living Trust Dtd 4/6/01;<br><br>Andrea J. Marks, trustee & beneficiary of Jacob M. Dick Rev Living Trust Dtd 4/6/01, executor & beneficiary of Estate of Jacob M. Dick, & trustee of Article 8.1 Trust created under Jacob M. Dick Rev Living Trust Dtd 4/6/01;<br><br>R. D. A., a minor, as beneficiary of the Article 8.1 Trust created under the Jacob M. Dick Rev Living Trust Dtd 4/6/01;<br><br>Rio Jocelyn Breen, as beneficiary of the Article 8.1 Trust created under the Jacob M. Dick Rev Living Trust Dtd 4/6/01; | Adv. Pro. No. 10-04570 (CGM) |

Article 8.1 Trust;

Suzanne Breen, as beneficiary of the Estate of Jacob M. Dick and the Jacob M. Dick Rev Living Trust Dtd 4/6/01; and

Douglas J. Sturlingh, as beneficiary of the Estate of Jacob M. Dick and the Jacob M. Dick Rev Living Trust Dtd 4/6/01

Defendants.

## MEMORANDUM DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF THE TRUSTEE

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
Nicholas J. Cremona, David J. Sheehan, Seanna R. Brown, Lan Hoang, Amy E. Vanderwal, Attorneys for the Trustee, Irving H. Picard
45 Rockefeller Plz
New York, NY 10111

CHAITMAN, LLP
Helen Davis Chaitman, Attorney for the Defendants
465 Park Avenue
New York, New York 10022

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Irving H. Picard ("Trustee"), Trustee for the Substantively Consolidated SIPA[1] Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS[2]") and the estate of Bernard L. Madoff, brings this adversary proceeding to avoid and recover fictitious profits transferred to the Defendant, Jacob M. Dick Rev Living Trust Dtd 4/6/01 (the "Living Trust"),

---

[1] SIPA means the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*.
[2] The term BLMIS is used only with reference to the LLC and not the sole proprietorship, which sometimes used the similar name of Bernard L. Madoff Investment Securities.

the Estate of Jacob M. Dick (the "Estate"), and others (collectively, the "Defendants"). The Trustee moves for summary judgment as to count one of the Trustee's complaint to avoid and recover amounts transferred from BLMIS to the Defendants. The Trustee seeks to recover $1,681,299 in fictitious profits transferred within the two years preceding the commencement of the SIPA liquidation (the "Two-Year Period"). The parties waived oral argument on the motion for summary judgment. For the reasons set forth in this memorandum decision, the Court finds the Defendants liable for these monies.

## Jurisdiction

This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. The Court has authority to enter a final order in this case. To the extent that it does not, the Court asks the District Court to construe this decision as proposed findings of fact and conclusions of law, pursuant to the Amended Standing Order of Reference dated January 31, 2012.

## Background

For a background of these SIPA cases and the BLMIS Ponzi scheme, please refer to the findings of fact in *Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 206–14 (Bankr. S.D.N.Y. 2019).

The Living Trust was formed under the laws of the State of New York. Answer ¶ 7, ECF No. 48.[3] The Estate is the grantor of the Living Trust. *Id.* ¶ 8. Jacob M. Dick died on June 22, 2008. *Id.* The Living Trust held two accounts with BLMIS: Account 1CM325 under the name Jacob M Dick Rev Living Trust Dtd 4/6/01 And June Dick TIC and Account 1CM883 under the name Jacob M Dick Rev Living Tst Dtd 4/6/01 Dr Jacob Dick C/O AJ Marks. Def's Opp'n and Resp. ¶ 114, ECF No. 115. The 1CM883 account was opened in May 2004 with a $1,044,484 transfer from Account No. 1CM325. Trustee's Stmt. ¶ 131, ECF No. 104; Def's Counter Stmt. ¶ 33, ECF No. 116.

Between December 11, 2006 and December 11, 2008, $1,681,299 in excess of principal was withdrawn from Account No. 1CM883. Def's Opp'n and Resp. ¶ 136, ECF No. 115. These withdrawals were funded with checks drawn from the 509 Account, one of three accounts used by BLMIS for the investment advisory business.[4]. Def's Counter Stmt. ¶ 35, ECF No. 116. The Defendants have provided checks evidencing these withdrawals. Chaitman Decl., Ex. Z, ECF No. 114.

The Defendants deny that the 1CM325 and 1CM883 accounts were funded by payments from BLMIS. Def's Counter Stmt. ¶ 35, ECF No. 116. Defendants argue instead that the Living Trust received payments from Bernie Madoff's sole proprietorship and never from BLMIS. *Id.* ¶ 36. Defendants dispute the admissibility of evidence establishing proof of the ownership of BLMIS, the application of the Ponzi scheme presumption, and the Trustee's entitlement to prejudgment interest. Def's Opp'n, ECF No. 113.

---

[3] Unless otherwise indicated, all ECF references herein refer to the docket of adversary proceeding, 10-04570.

[4] BLMIS primarily used three bank accounts for the investment advisory business: JPMorgan Chase Bank, N.A. ("Chase") account #xxxxx1703 (the "703 Account"); Chase account #xxxxxxxxx1509 (the "509 Account"); and Bankers Trust account #xx-xx0-599.

**Discussion**

**A. Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure, as applied by Rule 7056(c) of the Federal Rules of Bankruptcy Procedure, provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is one that requires resolution by a "finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This requires evidence on which a jury could return a verdict for the nonmoving party. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011). A material fact is one that might affect the outcome of the case. *Holmes v. Apple Inc.*, 797 F. App'x 557, 562 (2d Cir. 2019) (citing *Anderson* at 248).

The moving party has the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Failure to do so means that the motion for summary judgment must be denied. *Id.* The burden of producing evidence shifts to the nonmoving party after the moving party has met its burden. *See Anderson*, 477 U.S. at 248.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 143 (2d Cir. 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible

rumor, and conclusory allegations"). The nonmoving party must do more than make conclusory or speculative assertions. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310–12 (2d Cir. 2008).

## B. The SIPA Trustee May Avoid and Recover Transfers Under 11 U.S.C. § 548(a)(1)(A)

The Trustee moves for summary judgment to avoid and recover transfers of fictitious profits made to the Defendants under 11 U.S.C. § 548(a)(1)(A). Avoidance and recovery under Section 548(a)(1)(A) requires (i) a transfer of an interest of the debtor in property; (ii) made within two years of the petition date; (iii) with "actual intent to hinder, delay, or defraud" a creditor. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 Civ. 9050 (LMM), 2011 WL 1419617, at *2 (S.D.N.Y. Apr. 7, 2011), *aff'd*, 748 F.3d 110 (2d Cir. 2014).

### i. A Transfer of an Interest of the Debtor in Property

To avoid and recover the fictitious profits made within the two-year period, the Trustee must prove that the transfers were an interest of the debtor in property. 11 U.S.C. § 548(a)(1)(A). The Trustee can do so by showing that the property was "customer property" under SIPA § 78fff-2(c)(3). *See Peloro v. U.S.*, 488 F.3d 163, 170 (3d Cir. 2007) ("'[C]ustomer property,' as defined by SIPA, includes not only securities actually allocated to customer accounts, but any 'cash and securities . . . at any time received, acquired, or held . . . for the securities account of a customer.'").

Pursuant to SIPA § 78fff-2(c)(3), the Trustee may recover any property, which would have been customer property except for a transfer that is void or voidable under the Bankruptcy Code. SIPA § 78fff-2(c)(3). The property that was transferred in this way "shall be treated as customer property" and is "deemed to have been the property of the debtor." *Id.*; *see also Picard*

*v. JABA Assocs. LP*, 528 F. Supp. 3d 219, 236 (S.D.N.Y. 2021).  In this way, Section 78fff-2 allows the SIPA Trustee to "invoke the fraudulent transfer provisions in the Bankruptcy Code to recover customer property."  *Picard v. Gettinger (In re BLMIS)*, 976 F.3d 184, 199 (2d Cir. 2020).

The Trustee is seeking to avoid transfers made between April 18, 2007 and October 7, 2008, totaling $1,681,299.  Defendants do not dispute that checks from the 509 Account were used to fund withdrawals from Account 1CM883 (the "Living Trust Account").  Def's Counter Stmt. ¶35, ECF No. 116 ("Throughout the life of the Living Trust Account, withdrawals were paid by checks drawn from the 509 Account in the name of 'Bernard L. Madoff.'").  The Defendants do not dispute that the investment advisory business placed customer deposits into the 703 Account held with Chase.  Def's Counter Stmt. ¶¶ 20, 25, ECF No. 116.

The Defendants argue that there is a genuine issue of material fact as to whether the 703 and 509 Accounts were held in the name of BLMIS.  Def's Counter Stmt. ¶25 –31, ECF No. 116.  Defendants argue that the Accounts were held in the name of Bernard L. Madoff and that BLMIS did not acquire the investment advisory business: "[f]orm BD did not effectuate a transfer of all the assets and liabilities of the sole proprietorship to the LLC.  Form BD referred only to a transfer of the PT and MM businesses.  Form BD specifically stated that the LLC would not be engaged in the investment advisory business."  Def's Opp'n and Resp, ECF No. 115.

The Trustee has shown that all assets and liabilities of the sole proprietorship were transferred to BLMIS in 2001.  In 2001, Bernard L. Madoff filed an Amended Form BD with the SEC using his SEC registrant number.  Cremona Decl., Ex. 3, Amended Form BD, ECF No. 105.  On this Amended Form BD, Madoff attested that, "[e]ffective January 1, 2001, predecessor [the

sole proprietorship] will transfer to successor [BLMIS] all of predecessor's assets and liabilities related to predecessor's business. The transfer will not result in any change in ownership or control." *Id.* This form further certified that no customer accounts, funds, or securities are held or maintained by any other person, firm, or organization. *Id.* BLMIS assumed all of the sole proprietorship's assets and liabilities in this form and all "accounts, funds, or securities of customers" were transferred to BLMIS. *Id.*

The Trustee's evidence establishing the transfer of the investment advisory business to BLMIS is admissible. As stated by Judge McMahon, the expert reports and BLMIS records have been challenged previously and have repeatedly been "deemed admissible including on the Trustee's motion for summary judgment in avoidance actions" in cases like this. *In re BLMIS LLC* ("*Epstein II*"), No. 1:21-cv-02334-CM, 2022 WL 493734, at *20 (S.D.N.Y. Feb. 17, 2022). The evidence offered by the Trustee shows that the accounts were transferred to BLMIS in 2001 along with the investment advisory business.

The Defendants have not rebutted any of the evidence offered by the Trustee. Instead, the Defendants offer only speculation. The discrepancies Defendants point to—the names used on checks and statements, Bernard L. Madoff's failure to send a letter to Chase, and the failure to check a box in 2001 on Form BD—are slights of hand that are expected to appear following a Ponzi scheme. *Picard v. BAM, L.P.* (*In re BLMIS*), 624 B.R. 55, 60 (Bankr. S.D.N.Y. 2020). The failure to check a box on the Form BD indicating that BLMIS would engage in investment advisory services is "particularly meaningless," as the investment advisory business was not registered with the SEC until 2006. *Epstein II*, 2022 WL 493734, at *16. ("When Madoff did finally register the IA Business in 2006, he registered it as *BLMIS*, using the same SEC registrant number as BLMIS. The only conclusion that a reasonable trier of fact could reach is that the IA

Business was transferred to BLMIS in 2001 with the rest of the business assets and was registered under BLMIS in 2006. . . ."). The Defendants do not raise genuine issues of material fact that would lead a reasonable trier of fact to conclude that Madoff withheld his fraudulent enterprise after 2001.

In any case, the Trustee need not prove that the investment advisory business was transferred to the LLC in 2001. The Trustee need only prove that the property he is seeking to recover was "customer" property prior to the transfer. All monies transferred from the 509 Account are "customer property" and are deemed to have been BLMIS's property for purposes of these SIPA cases. *BAM, L.P.*, 624 B.R. at 62 ("When the Defendants invested their money into the IA Business, the deposits were placed into the Bank Accounts and commingled with all of the Ponzi scheme victims' deposits. The funds held in the Bank Accounts were meant to be invested legitimately through BLMIS but never were. Thus, they were 'customer property.'"); *see also Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 233 (Bankr. S.D.N.Y. 2019) ("All of the transfers were made from the 509 Account held by BLMIS and consisted entirely of fictitious profits. Under SIPA, the customer deposits are deemed to have been BLMIS's property for the purposes of these adversary proceedings.").

Here, it is undisputed that customer deposits were deposited in the 703 Account and transfers originated in the 509 Account. Def's Opp'n and Resp. ¶¶ 72, 89, ECF No. 115; Def's Opp'n 4, ECF No. 113 ("Throughout the life of the Living Trust Account, withdrawals were paid by checks drawn from Madoff's '509 Account' at JPMorgan Chase Bank, N.A. . . ."). The Trustee has met his burden of demonstrating that the transfers were of an interest of the debtor in property.

ii. <u>Made within Two Years of the Petition Date</u>

Section 548(a)(1)(A) limits recovery of transfers made within two years of the petition date. It is undisputed that the deposits and withdrawals at issue took place between December 11, 2006 and December 11, 2008. Def's Opp'n and Resp. ¶ 115, ECF No. 115 ("Defendants do not dispute the deposits and withdrawals reflected on Exhibit B to the Complaint from December 11, 2006 to December 11, 2008."). The Trustee has established that the transfers occurred inside of the Two-Year Period preceding the petition.

iii. <u>With Actual Intent to Hinder, Delay, or Defraud a Creditor</u>

Actual intent to hinder, delay, or defraud a creditor may be established by showing that BLMIS operated a Ponzi scheme. *Picard v. Cohmad Sec. Corp.*, 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption' . . . ."). "It is well established that the Trustee is entitled to rely on a presumption of fraudulent intent when the debtor operated a Ponzi scheme." *Picard v. JABA Assocs. LP*, 528 F. Supp. 3d 219, 237 (S.D.N.Y. 2021). There is no basis for disputing the application of the Ponzi scheme presumption to cases involving the withdrawal of fictitious profits. *Cohmad*, 454 B.R. at 330.

Defendants allege that there was no Ponzi scheme, as Bernard L. Madoff continued to operate a legitimate business through the sole proprietorship, and "Madoff purchased large amounts of T-Bills for customers and held them through the time they were credited to customers' accounts." Def's Opp'n 31, ECF 113.

The unrebutted evidence of Bruce G. Dubinsky shows that BLMIS did not purchase T-Bills for customer accounts. Dubinsky Rep. ¶ 227, ECF No. 107. The testimony of Frank

Page **10** of 14

DiPascali confirms that none of the T-Bills purchased by the investment advisory business were those reported on the customer statements. *Id.* ¶ 226; Cremona Decl., Ex. 7, ECF No 105.

The Defendants argue that the Court should follow Judge Menashi's concurrence in *Picard v. Citibank*, N.A., 12 F.4th 171, 200–04 (2d Cir. 2021) and hold that the Ponzi scheme presumption is inconsistent with federal and state law. This Court will follow all courts who have opined on the issue and allow the Trustee to rely on the Ponzi scheme presumption. *See Epstein II*, 2022 WL 493734, at *17.

The Court holds that the Trustee has met its burden of proof for summary judgment on this issue. *See Picard v. Legacy Capital Ltd.*, 603 B.R. 682, 688–93 (Bankr. S.D.N.Y. 2019) (discussing in detail that BLMIS was a Ponzi scheme and why the Trustee is permitted to rely on the Ponzi scheme presumption to prove fraudulent intent as a matter of law); *see also Bear Stearns Secs. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[T]he Ponzi scheme presumption remains the law of this Circuit.").

The Trustee has met his burden on every element of his case. There is no genuine issue of material fact as to the transfer of the interest of the debtor in property made within two years of the petition date with actual intent to hinder, delay, or defraud a creditor.

### C. The Trustee has Standing to Recover Transfers

The Defendants, citing *In re Bernard L. Madoff Inv. Sec. LLC* ("*Avellino*"), 557 B.R. 89, 110 (Bankr. S.D.N.Y. 2016), *reconsideration denied*, 2016 WL 6088136 (Bankr. S.D.N.Y. Oct. 18, 2016), argue that the Trustee lacks standing to recover transfers in this case, and that only Bernard L. Madoff's individual trustee, Alan Nisselson, has standing to recover transfers. The Defendants' reliance on this case is misplaced. As Judge McMahon recently held, *Avellino* concerned transfers prior to 2001. *Epstein II*, 2022 WL 493734, at *11. The *Avellino* ruling

"has no bearing on the Trustee's standing" in cases concerning transfers made during the Two-Year Period. *Id.*

### D. Prejudgment Interest Shall be Awarded

The Trustee has requested prejudgment interest from the filing date of this case, December 11, 2008, through the date of the entry of judgment at the rate of 4%. The Defendants oppose this request. This Court has considered this issue on multiple prior occasions. *See, e.g.*, *BAM L.P.*, 624 B.R. at 62–66.

To determine whether prejudgment interest should be awarded, the Court must consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992). The purpose of prejudgment interest is to make the Plaintiff whole rather than to punish Defendants or to provide Plaintiff with a windfall. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citations and quotations omitted). "Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded." *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (citations omitted). "The court must, however, explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enter., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006).

Prejudgment interest is "normally" awarded in avoided transfer cases "to compensate for the value over time of the amount recovered." *Geltzer v. Artists Mktg. Corp. (In re Cassandra Grp.)*, 338 B.R. 583, 599 (S.D.N.Y. 2006) ("To fully and fairly compensate Cassandra's creditors for their loss—not only of $300,000 that was fraudulently conveyed to the Defendants, but of the use of that money since the date of the demand—the Trustee should be permitted to recover prejudgment interest."); *see also Messer v. McGee (In re FKF 3, LLC)*, 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (awarding prejudgment interest to compensate for "loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the lost funds").  The District Court has affirmed this Court's award of prejudgment interest to the Trustee against parties who have insisted on relitigating issues that the Court has already decided and who have forced the Trustee to expend resources defending against legal arguments that have already been decided in these SIPA cases. *Epstein II*, 2022 WL 493734, at *16.

Prejudgment interest is warranted here.  The Trustee has spent years prosecuting this case and cannot be made whole without an award of prejudgment interest.  He has spent time defending against arguments that have already been decided.  Although the Defendants may not have been responsible for the fraud, the purpose of prejudgment interest is to make the Trustee whole.  The Court will award the Trustee prejudgment interest in the amount of 4% commencing on the filing date of December 1, 2010 through the date of an entry of judgment.

## Conclusion

For the foregoing reasons, summary judgment is granted in favor of the Trustee.  The Trustee shall submit proposed order(s) within fourteen days of the issuance of this decision,

directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: June 6, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**